# AMY L. JEWELL v. PETER JEWELL AND OTHERS.[1]

May 7, 1943.

No. 33,396.

[1]Reported in 9 N. W. (2d) 513.

*Leonard Eriksson* and *James S. Eriksson,* for appellant.

*J. E. Lundrigan, Doherty, Rumble, Butler, Sullivan & Mitchell,* and *Charles E. Nieman,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order sustaining respondents' demurrer to her complaint. (Respondents on this appeal are Peter A. Jewell, sued individually and as representative of the estate of his father, Peter J. Jewell, deceased, Viola Jewell, his wife, National Surety Corporation, surety on Peter A. Jewell's bond, Oscar Dahl, special guardian of plaintiff's estate, and John Kater and C. V. Gardiner, sureties on his bond. While the other defendants are not parties to this appeal, we learn from the complaint that defendant Harry Paddock is the general guardian of plaintiff's estate and that defendant United States Fidelity & Guaranty Company is the surety on his bond. Counsel for respondents state

that plaintiff has not appealed from an order sustaining the demurrers of Paddock and his surety.)

The complaint is very lengthy, comprising more than 36 pages of closely printed matter in the record. The addition of the exhibits attached to it brings the total to 46 pages. And amplifying all this we have plaintiff's main and reply briefs, which attempt to clarify and explain what is really intended to be charged in the action. Because of the hodgepodge character of the complaint, we shall point out only the controlling high lights in it.

Peter J. Jewell died intestate April 11, 1934, survived by his wife, the plaintiff here, who is now an incompetent person confined in the hospital for the insane at Fergus Falls. A. T. Mallinger is her guardian *ad litem*. Decedent also left surviving him defendant Peter A. Jewell, a son. He and plaintiff are decedent's only heirs at law. Upon plaintiff's petition, the son was appointed representative of his father's estate on July 21, 1934, and has ever since continued to act in that capacity, the probate proceedings not having as yet been concluded.

Decedent's estate consisted of real and personal property stated to have an appraised value of $4,780. The real estate included 80 acres of land, decedent's homestead, and other land, to which we need make no further reference. After the administrator had qualified he took possession of the entire estate, including the personal property, which plaintiff claims should have been set aside and allotted to her, the appraised value of which is said to be $960. Claims filed against the estate were allowed at $559.33. This included a chattel mortgage for $400. Taxes had accrued against the land at the time of decedent's death amounting to $576.24, of which $138.89 was "against the land taxed as homestead."

The complaint has for its principal foundation the claim that the administrator, his wife, Dahl as plaintiff's special guardian, and Harry Paddock, her general guardian, were faithless in their duties; that, together with the other defendants, they were "aided and abetted by divers other persons to the plaintiff unknown" in

furtherance of a common conspiracy and "with malicious intent" to prevent plaintiff from getting her lawful selections from the property of her husband's estate; that they corruptly influenced the probate judge so that he aided and abetted them in carrying out their unlawful designs; that the probate judge "has aided and abetted" defendants in "furtherance" of a "conspiracy" to take plaintiff's property from her and to convert it to the use of the son and his wife; that the orders of the probate court in the proceedings there had were "sham and fraudulent"; that the court has made many orders which have resulted in loss and damage to plaintiff and despoiled her of her rights in the estate of her husband; and that "the aforesaid conspiracy and agreement between the defendants and the carrying out of the same have beggared the plaintiff, impaired her intellect, and deprived her of all intercourse and association with her friends and neighbors, and have rendered her homeless, friendless and penniless, all to her special damage in the sum of $25,000." In her prayer for relief she asks $8,179.36 "for general damages," $15,000 for "special damages," and $25,000 "exemplary damages," a total demand of $48,179.36. All of these extravagant claims arise out of an estate whose total value is stated in the complaint to be less than $5,000. As the surviving wife, plaintiff of course was not entitled to all of it, but only the portion which the statute gives her.

We shall not attempt to include many of the other charges of neglect, misfeasance, and misconduct with which defendants are charged. The complaint literally bristles with them. Enough has been said, we think, to show what inverted legal talent can do under the guise of seeking relief under the law.

■ We note as a matter of importance the fact that no claim is made that any appeal or other review has been sought in respect to these many and varied proceedings had before the probate court and still pending there. That court is by the constitution vested with plenary and exclusive original jurisdiction of the subject matter and the parties to this litigation. Of course, it has probate jurisdiction only. In that respect its field is limited to "the estates

of deceased persons and persons under guardianship." It has "no other jurisdiction, except as prescribed by this Constitution." Minn. Const. art. 6, § 7.

Respondents jointly demurred to the complaint, specifying as grounds therefor (1) that the district court is without "jurisdiction of the subject matter of the action"; (2) that "there is a defect and misjoinder of parties defendant" (specifying wherein these objections find. support) ; and (3) "that there are several causes of action improperly united." The court sustained the demurrer upon the first and third grounds but said nothing about the second. If either ground so sustained is valid, affirmance of the order necessarily follows.

Counsel for respondents have emphasized as of special importance the question of misjoinder of causes of action, and we agree with them on this point.

■ Plaintiff's counsel say that Scheele v. Union L. & F. Co. 200 Minn. 554, 274 N. W. 673, was their guide in drafting the complaint here challenged, quoting as their authority for bringing this kind of action the language of that opinion (200 Minn. 555, 556, 274 N. W. 674, 675), that "plaintiff has welded" defendants' wrongful acts "into a single claim under hammer of the charge that" they "were co-conspirators in a successful scheme to defraud her." They also rely heavily upon subdivision four of the opinion, summarized in the court's headnote, which reads:

"A conspiracy to defraud is ordinarily provable only by circumstantial evidence. If in the end there is a completed structure of fraudulent result the frame of which has been furnished piecemeal by several defendants, the parts when brought together showing adaptation to each other and the end accomplished, it is reasonable to draw the inference of conspiracy and common intent to defraud."

*Cf.* State v. Cook, 215 Minn. 182, 9 N. W. (2d) 518, where the subject is discussed from the angle of criminal conspiracy.

Respondents claim that the Scheele case is readily distinguish-

able, because in that case there were in fact no separate causes of action and, moreover, nothing involving the jurisdiction of the probate court. In that case conspiracy was "welded" in fact into a single cause, which was against and affected all defendants alike. Here, however, plaintiff has pleaded at least two causes of action and so alleges them in her complaint. The first, as we shall show, embraces many and varied causes, not affecting all defendants alike. In her second cause she "incorporates and realleges" all allegations set forth in her first cause "as fully as if they were herein realleged word for word." She then proceeds to allege that prior to the commencement of this action she retained her present counsel and that they have rendered services for her amounting in value to $872.40 and have incurred expenses in her behalf in the amount of $146.96, a total of $1,019.36, and in this sum she demands additional damages.

■ Before entering into a discussion of the many causes of action in fact pleaded by plaintiff, we think it well to call attention to our statute and decision law. It is firmly established that in order that two or more causes of action may be united in the same pleading the result must be one that affects all parties to the action. Minn. St. 1941, § 544.27 (Mason St. 1927, § 9277); Anderson v. Scandia Bank, 53 Minn. 191, 54 N. W. 1062; Nahte v. Hansen, 106 Minn. 365, 367, 119 N. W. 55. In Fischer v. Hintz, 145 Minn. 161, 163, 176 N. W. 177, we held:

"When a complaint contains causes of action which cannot properly be united and they are mingled and combined, the defendant is not required to move, in the first instance, for the separation of the several causes of action in order that he may demur when such separation has been accomplished. *He may demur for misjoinder, though the pleading in form sets forth but one cause of action, if in reality it embraces two or more that cannot be joined in any form.*" (Citing authorities.) (Italics supplied.)

Upon this premise we shall review the complaint insofar as it has a bearing upon this phase.

In paragraphs one to seven, inclusive, and nine, plaintiff predicates a cause of action for breach of contract between herself and her son in his personal capacity. She charges him with having promised her delivery of her interests in her husband's estate but that he breached his "said promises" and "delayed and prolonged the administration" of the estate for selfish reasons personal to himself. The other defendants were not parties to that contract. There is no charge of conspiracy in respect to that cause. Obviously, that does not affect anyone except plaintiff and her son in his personal obligations to her. In another portion of her complaint she predicates a cause of action against her son in his representative capacity for his failure to comply with the order of the probate court to settle the estate within one year. As to that cause, too, conspiracy does not enter into the case, since it does not affect all the parties to this action. Only the son and his surety are here involved. In other portions she predicates a cause of action against her son and his wife asking for the recovery of real property and damages for its detention. Here, too, they are the only ones involved in that cause, and here also there is no charge of conspiracy. In another part of her complaint she charges her guardian Paddock and his surety, including Dahl and his sureties, as special guardian, with wrongdoing in their representative capacities.

Plaintiff cannot, by the mere extravagant use of words, weld "into a single claim" for damages for conspiracy her actions *ex contractu* and *ex delicto* and, "under hammer of the charge that" defendants "were coconspirators in a successful scheme to defraud her," thereby inflict the penalties going with such a charge upon all of them.

In addition, we also have here two foreign corporate sureties upon official bonds, one for the administrator of decedent's estate, the other for one of her own guardians. As to them their liability is purely contractual. Their liability arises when and if there is breach of official duty on the part of their respective principals. As to what may be charged against them, the probate court had

and still retains exclusive and original jurisdiction. And as to the special guardian, Dahl, and his personal sureties, we face a similar situation.

Plaintiff has said much and has alleged several causes of action by reason of various orders made by the probate court. To charge and prove all the defendants with a conspiracy in respect to these seems not only farfetched but impossible of attainment.

■ Viewing the complaint as a whole, we can find no escape from the conclusion reached by the trial judge that there is here a mixture of causes of action which cannot possibly be made a basis for this kind of action. In Fischer v. Hintz, 145 Minn. 161, 176 N. W. 177, we held, as expressed in paragraphs 2 and 3 of the court's headnotes and fully sustained by the opinion, that:

■ "A cause of action against one in his representative capacity cannot be joined in the same complaint with one against him in his individual capacity."

■ "One who obtains possession of the personal property of a decedent as administrator of his estate may be required by the probate court to account for and deliver to the widow of decedent the portion of such property she is entitled to select as her statutory allowance. An action by the widow to recover such property, or its value, cannot be brought in the first instance in the district court. The probate court controls the property through the administrator, and its jurisdiction over him and over the estate is exclusive."

Order affirmed.