## STATE v. ROBERT J. BURNS AND OTHERS.
## NEIL J. COOK, APPELLANT.[1]

May 7, 1943.

No. 33,336.

*R. F. Schroeder,* for appellant.

*Harry E. Burns,* Special County Attorney, for the State.

PETERSON, JUSTICE.

The defendants, Neil J. Cook, Robert J. Burns, and L. J. Seiberlich, copartners doing business as the Bureau of Credit Control, were indicted for having conspired on August 6, 1941, to cheat and defraud one John F. Theisen by means of false representations that they had for collection an account against him on which he owed one Forner $61.90; that, although the amount due on said account on May 1, 1941, was $30, it had become $61.90 because Theisen had been dilatory in making payment; that defendants were authorized to bring an action against Theisen and his wife

[1]Reported in 9 N. W. (2d) 518.

to enforce payment of the account; and that it was not necessary for the Theisens "to see a lawyer or have any trouble in the matter or pay any attention to the service of the summons and complaint" then and there served upon them in the action by Forner against the Theisens on the account, provided they paid to one Joseph M. Schmitt, the agent of defendants, the sum of $5 forthwith and the balance of the $61.90 in installments of $5 to the Bureau of Credit Control. Defendants were convicted. Cook appeals.

The Bureau of Credit Control was a collection agency authorized to do business under Minn. St. 1941, §§ 332.01-332.11 (Mason St. 1927, §§ 5888 to 5894, and *Id.* 1940 Supp. §§ 5887-51 to 5887-58). Defendants filed the tradename certificate required by *Id.* §§ 333.01 to 333.02 (*Id.* 1927, §§ 7346-7347).

Forner had placed this account and others with another collection agency known as the St. Cloud Credit Association for collection. Originally Theisen owed Forner $171.90 for threshing. On May 1, 1941, he paid $110 to the Association on account. It gave him a receipt for the amount paid which recited that the balance due was $30.

Some time afterward Schmitt, as the Bureau's employe, solicited Forner to turn over the accounts to it for collection. Forner agreed to place the accounts with the Bureau after he had taken them from the Association. With information on some cards furnished by the Association to Forner relative to the accounts, Schmitt prepared a listing sheet for placing the accounts with the Bureau. This sheet showed the names of the debtors, the amounts due on the accounts, and the charges to be made by the Bureau for collection both with and without suit. The Theisen claim was listed therein in the amount of $61.90. Subsequently, Forner mailed the listing sheet to the Bureau. It promptly acknowledged receipt thereof by letter, which contained a list of the accounts with the names of the debtors and the amount of each account. The Theisen account was listed therein at $61.90 with a

statement to the effect that the charges would be, if collected without suit, 50 percent on the first $15 and 33 1/3 percent of the balance, and, if collected by "legal action," 50 percent of the claim. The letter stated that the accounts were received on the basis of the rates mentioned and requested Forner to inform the Bureau of any errors. He made no reply.

Forner testified that he told Schmitt that he did not want suit started on the Theisen account. This Schmitt denied. At any rate, Forner's direction to Schmitt, if it was in fact given, was not communicated to anyone connected with the Bureau. The only information in its hands was contained in the listing sheet prepared by Schmitt and the letter accepting the account upon the terms set forth.

Subsequently, P. C. Bettendorf, an attorney associated with the Bureau, commenced an action in the municipal court of St. Cloud in which Forner was named as plaintiff and Theisen and his wife as defendants to recover $61.90 as the balance due on the account. The papers were turned over to Schmitt for service. Cook or Burns knew the action was being started.

On August 6, 1941, Schmitt served the summons and complaint on Theisen and his wife. They claimed that, while the amount originally owing was $171.90 and $110 had been paid, the balance due was only $30, because of an agreement to compromise the balance, and not $61.90 as claimed in the summons and complaint. Schmitt concluded that, although there was an offer to compromise the balance for $30, the time for payment had expired and that, because of the delay, the original balance of $61.90 was due. Thereupon, the Theisens agreed with Schmitt to pay the $61.90 in installments of $5 down and $5 per month. Schmitt claims that he told them that no further action would be taken. They claimed that he told them it would not be necessary to consult a lawyer about the matter.

In September the Theisens paid $5 to the Bureau on account. In October a representative of the Association called on them to collect the $30 due as per the receipt of May 1. Upon being in-

formed by the Theisens of the action commenced against them and the settlement which they had made through Schmitt on August 6, the representative of the Association advised them not to make payment to the Bureau, but to the Association.

Acting upon the advice of the Association's representative, the Theisens made no payments to the Bureau in October and November. Thereupon Bettendorf, as attorney of record for plaintiff (Forner), caused judgment to be entered against the Theisens for the amount demanded in the action less the $10 paid and for plaintiff's costs and disbursements. An execution was then issued, under which a levy was made upon an automobile owned by Theisen, who immediately got in touch with the Association and paid the $30 due under the compromise he had made through it. He then procured from Forner, as plaintiff in the action, a written direction to Bettendorf to discontinue all proceedings, which was promptly done.

Theisen testified that on May 1 the balance due was $61.90, the amount claimed in the action against him. He also testified that according to the receipt the amount due was $30. His wife testified that it was $30.

The evidence shows as a matter of law that Forner placed the Theisen account with defendants for collection; that Forner represented to defendants that there was due to him $61.90 on the account; that he authorized them to cause suit to be brought to recover the $61.90 claimed to be due; that they did not know until after the levy on Theisen's automobile that the Theisens claimed that any lesser sum was owing by them; and that they did not know that Forner, if that was the fact, told Schmitt that he did not want an action brought against the Theisens to enforce payment of the account. Although the evidence is somewhat unsatisfactory, we shall assume for purposes of decision that it supports a finding that Theisen owed Forner under the compromise agreement not $61.90, but $30 only. While the evidence is in conflict, it supports a finding that on August 6 Schmitt represented to the Theisens that if they paid him $5 and paid the balance to the

Bureau at $5 per month they would have no further trouble in the matter and that it would not be necessary for them to consult a lawyer about it; but this representation, however ill advised it might have been, was true.

Of the numerous points raised by defendant, we deem it necessary to consider only one, which goes to the merits of the state's case, *viz.*, that the evidence is insufficient to support a verdict of guilty.

Conspiracy to cheat and defraud is a misdemeanor under *Id.* § 613.70(4), (*Id.* 1927, § 10055[4]). It is important in considering the case to bear in mind that (1) a conspiracy to commit a crime is a separate, substantive offense from the crime which is the object of the conspiracy, State v. Peterson, 213 Minn. 56, 4 N. W. (2d) 826; and (2) persons may combine to commit lawful acts, Robinette v. Price, 214 Minn. 521, 8 N. W. (2d) 800; Boasberg v. Walker, 111 Minn. 445, 127 N. W. 467. To constitute a conspiracy to cheat and defraud, there must be not only a combination, but a common object to cheat and defraud, which each member of the combination intends shall be accomplished by the concerted action of all. Ballantine v. Cummings, 220 Pa. 621, 70 A. 546; 15 C. J. S., Conspiracy, p. 1084, § 54.

In the instant case the only combination, agreement, or concerted action by the defendants was the operation of a collection agency. That purpose was lawful in virtue of the statutes authorizing such business and existed prior to the commission of the acts which are the basis of the charge against them. Where parties combine and agree for innocent and lawful purposes, they are not liable for criminal conspiracy on account of acts done pursuant to the agreement or combination, unless such acts are criminal and they participate in or assent to the commission of the same. Commonwealth v. Hunt, 45 Mass. (4 Metc.) 111, 38 Am. D. 346 (*per* Shaw, C. J.); Carew v. Rutherford, 106 Mass. 1, 8 Am. R. 287. Defendants had no actual intent to cheat and defraud by representing that they were authorized to institute suit and that $61.90 rather than $30 was due on the account, because Forner's

direction to Schmitt not to sue on the Theisen account and Schmitt's information obtained from the Theisens that only $30 was due on the account were never communicated to them. In order to hold defendants criminally liable, it would be necessary to impute to them under the doctrine of *respondeat superior* actual knowledge of these facts known only by their employe.

Ordinarily, the doctrine of *respondeat superior* has no application in criminal cases. Criminal liability, except for certain statutory offenses and others not here material, is based upon personal guilt. Responsibility for the crimes of others rests upon causation. A defendant is held criminally liable for having counselled, procured, commanded, incited, authorized, or encouraged another to commit a particular crime. At the very time the rule of *respondeat superior* was being developed as a basis for vicarious civil liability it was rejected as a ground for similar criminal liability in Rex v. Huggins, 2 Strange 882, 2 Raym. Ld. 1574, 92 Reprint 518; Sayre, "Criminal Responsibility for the Acts of Another," 43 Harv. L. Rev. 688, at pp. 694-701. Where a specific criminal intent is an essential ingredient of the crime charged, the doctrine of *respondeat superior* is inapplicable to impute to an employer knowledge of facts known only by his employe. State v. Robinson, 55 Minn. 169, 56 N. W. 594; State v. Mueller, 38 Minn. 497, 38 N. W. 691; People v. Green, 22 Cal. App. 45, 133 P. 334; Commonwealth v. Sacks, 214 Mass. 72, 100 N. E. 1019, 43 L.R.A.(N.S.) 1, Ann. Cas. 1914B, 1076, and extensive annotation. In Chisholm v. Doulton [1889] 22 L. R. Q. B. D. 736, 741, Cave, J., aptly expressed the thought as follows:

"It is a general principle of our criminal law that there must be as an essential ingredient in a criminal offence some blameworthy condition of mind. Sometimes it is negligence, sometimes malice, sometimes guilty knowledge—but as a general rule there must be something of that kind which is designated by the expression mens rea. Moreover, it is a principle of our criminal

law that the condition of the mind of the servant is not to be imputed to the master."

We have applied the rule in civil cases involving conspiracies. In Benton v. Minneapolis T. & Mfg. Co. 73 Minn. 498, 506, 76 N. W. 265, 267, we held that a client's attributed knowledge of facts known only by his attorney is "merely constructive or imputed notice" and said:

"This could not make him a conspirator, nor would it justify the finding to the effect that he was guilty of actual and intentional fraud. Imputed or constructive notice cannot be relied on to support a charge of direct, personal conspiracy to defraud."

We there cited Reisan v. Mott, 42 Minn. 49, 43 N. W. 691, 18 A. S. R. 489, where we held that a person's purpose or intention "is not to be conclusively presumed or legally imputed to him merely because of the mental condition or the knowledge of another person, however related to him."

The most common instances where a master, without active participation on his part, is liable for the servant's crime, are those arising under statutes providing, either expressly or impliedly, for a vicarious criminal liability. These relate principally to the sale of liquor and food and similar regulations, State v. Sobelman, 199 Minn. 232, 271 N. W. 484; 2 Am. Jur., Agency, p. 301, § 383.

Criminal liability for conspiracy is predicated upon personal guilt. A conscious and intentional purpose to break the law is an essential ingredient of the crime. Landen v. United States (6 Cir.) 299 F. 75. A person cannot become a party to or criminally responsible for the criminal acts of another unless he knows their true character. In United States v. Falcone, 311 U. S. 205, 61 S. Ct. 204, 207, 85 L. ed. 128, holding that the defendant, for lack of knowledge of the existence of a conspiracy among those to whom he sold materials which were used by them to manufacture illicit distilled spirits, could not be found guilty of the conspiracy, Mr. Justice Stone (now Chief Justice), speaking for the court said:

"Those having no knowledge of the conspiracy are not conspira-

tors * * * and one who without more furnishes supplies to an illicit distiller is not guilty. of conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a party but of which the supplier had no knowledge."

A vicarious intent is not sufficient to make a party a conspirator. See Commonwealth v. Nichols, 51 Mass. (10 Metc.) 259, 43 Am. D. 432. A defendant cannot be found guilty of conspiracy to cheat and defraud unless it be shown that he and the other alleged conspirators had a common purpose to cheat and defraud and each of them understood that the others had such purpose. Ballantine v. Cummings, 220 Pa. 621, 70 A. 546, and 15 C. J. S., Conspiracy, p. 1084, § 54, *supra*.

Of course, a conspiracy need not be established by direct evidence. It may be inferred from the circumstances. Nor is it necessary to show a formal agreement to commit the crime charged. Where the evidence permits an inference of concert of action to accomplish a given unlawful result, as where several persons commit separate acts which form parts of a connected whole, an inference of conspiracy—that there was concert in both planning and execution—is permissible. The parts or acts done by each must, however, not only tend to show a prior unlawful combination, but negative the idea of lawful undertaking or purpose. Jewell v. Jewell, 215 Minn. 190, 9 N. W. (2d) 513; Scheele v. Union L. & F. Co. 200 Minn. 554, 274 N. W. 673; Ballantine v. Cummings, 220 Pa. 621, 70 A. 546, *supra*.

In the instant case there is no room for an inference that the defendant Cook had actual knowledge of any of the facts known only to Schmitt, without which his acts were not only not criminal, but innocent and lawful. Such knowledge was necessary to render unlawful as to him the collection of the Theisen account by the means employed. For these reasons, the evidence is insufficient to sustain the conviction. The defendant Cook is entitled to an absolute discharge.

Reversed with directions absolutely to discharge the defendant.