**STATE of Minnesota, Respondent,**

v.

**Michael Allen HATFIELD, Appellant.**

No. C9–00–1183.

Court of Appeals of Minnesota.

June 5, 2001.

Mike Hatch, Attorney General, St. Paul; and Terry Viesselman, Martin County Attorney, Fairmont, for respondent.

Mary R. Vasaly, Office of the State Public Defender, Special Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by TOUSSAINT, C.J., AMUNDSON, and HUSPENI, JJ.*

## OPINION

TOUSSAINT, Chief Judge

On direct appeal, appellant Michael Allen Hatfield challenges his convictions for conspiracy to manufacture methamphetamine and child endangerment, arguing that there was insufficient evidence in the record to support the convictions. Because there was no evidence establishing an actual agreement between Hatfield and

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

another person to manufacture methamphetamine, we reverse his conviction for conspiracy to manufacture methamphetamine. Because there was evidence establishing that Hatfield had placed his children in danger, we affirm his conviction for child endangerment.

## FACTS

On December 3, 1999, the Fairmont Police Department received a phone call from the Thomas County Sheriff's Department in Kansas. The sheriff's department informed the Fairmont police that their department had a felony warrant on appellant Michael Hatfield for the manufacture of methamphetamine in Kansas and that they believed Hatfield was residing with David Stedman at 1211 Albion Avenue, Fairmont, Minnesota. Officers from the Fairmont police department went to the address to execute the warrant.

Upon arriving, the officers observed a male, Anthony Theobald, and a female, Bobbie Nowak, in the driveway, behind a car with the trunk open. At Hatfield's request, Theobald had brought a red cooler and an altered propane tank containing anhydrous ammonia to the Stedman residence.

While some of the officers approached Theobald and Nowak, others circled the home and approached from the back. As these officers approached the rear door, they saw Hatfield push a red cooler into the garage. While Hatfield was being placed under arrest, one of the officers walked up to the open door of the garage. The officer immediately noted a pungent odor resembling ammonia, a metallic flavor in his mouth, stinging and burning of his eyes, and "his lungs felt as though he was in a room full of cigarette smoke." Believing that there was a methamphetamine lab in operation, the officer radioed another officer with specialized training in methamphetamine labs.

When the officers asked if anyone was inside the home, they were informed that there were five children ranging from six months to twelve years of age in the home unsupervised. Four of the children belong to Hatfield, the fifth to Stedman. The officers approached the house and entered. Upon entering, the officers noted the same pungent odor as in the garage, burning eyes, and metallic flavor in their mouths. The officers removed the children from the home, believing that a methamphetamine lab was set up in the home and that the chemicals used in such labs are extremely toxic and dangerous. The children were picked up by Human Services.

While the officers were waiting for Human Services, Stedman, the owner of the residence, arrived. He informed officers that he is an over-the-road truck driver and had just returned home after leaving on November 28, 1999. He stated that he was related to Hatfield and that Hatfield and his family had arrived at his home on November 28, 1999. Stedman had permitted the Hatfield family to stay at his residence while he was gone. Stedman stated that he did not know that Hatfield was manufacturing drugs in his residence and directed the police to search his home and remove all drugs that they discovered.

The police conducted a search of the residence. In the garage, the officers located a propane tank that had been altered, presumably, although not confirmed, to contain anhydrous ammonia and the cooler, which held five jars smelling of ammonia. In addition, there was a lock box for which Hatfield had a key. After obtaining a search warrant for the lock box, the officers discovered coffee filters, plastic tubing, plastic bags, and Heet starting fluid. In the basement of the home, the officers discovered lithium batteries,

snippers, pliers, empty Pseudoephedrine boxes and blister packs, coffee filters, Heet starting fluid, a coffee grinder, rock salt, isopropyl alcohol, and metal bowls with a white residue. In the bed of Stedman's truck that had been stored near the garage there were 500 ephedrine and Pseudoephedrine pills. All of the foregoing items are used in the production of methamphetamine.

Stedman indicated that none of the items belonged to him. His ex-wife had lived in the home up until the month previous to this incident. However, Stedman stated that they had cleaned the home and the garage after she had left.

Incident to Hatfield's arrest, the officers searched his person. The officers discovered $447 in cash, two glass pipes with a white residue, a small white pill box which contained a rock of methamphetamine, a metal rod with a red handle and burn marks on the end, a green lighter, and five razor blades, two with white residue on them.

Hatfield was charged with and convicted of conspiracy to manufacture methamphetamine in violation of Minn.Stat. §§ 152.096, subd. 1, 152.021, subd. 2(a) (2000); possession of controlled substance in violation of Minn.Stat. § 152.025, subd. 2(1) (2000); and child endangerment in violation of Minn.Stat. § 609.378, subd. 1(b)(1) (2000). This direct appeal followed.

## ISSUES

I. Was there sufficient evidence to support the jury's verdict that appellant conspired to manufacture methamphetamine in violation of Minn.Stat. §§ 152.096, subd. 1, 152.021, subd. 2(a) (2000)?

II. Was there sufficient evidence to support the jury's verdict that appellant endangered his children in violation of Minn.Stat. § 609.378 (2000)?

## ANALYSIS

This court's review of the sufficiency of the evidence is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, supports the verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). Circumstantial evidence is entitled to as much weight as other evidence. *Id.* A conviction based on circumstantial evidence merits stricter scrutiny, but is proper if the circumstances proved are consistent with guilt and inconsistent with any other rational hypothesis. *State v. Walen,* 563 N.W.2d 742, 750 (Minn.1997).

### I.

Hatfield argues that the evidence was insufficient for the jury to find him guilty of conspiracy to manufacture methamphetamine. By statute, a person is guilty of a first-degree controlled substance crime if the person conspires to manufacture any amount of methamphetamine. Minn.Stat. §§ 152.096, subd. 1, 152.021, subd. 2a (2000).

> It is important in considering the case to bear in mind that (1) a conspiracy to commit a crime is a separate, substantive offense from the crime which is the object of the conspiracy; and (2) persons may combine to commit lawful acts * * *.

*State v. Burns,* 215 Minn. 182, 186, 9 N.W.2d 518, 520 (1943) (citations omitted). To constitute a conspiracy to manufacture methamphetamine it must be demonstrated that: (1) a person entered into an agreement with another to manufacture methamphetamine; and (2) there was an overt act in furtherance of the conspiracy. Minn.Stat. §§ 152.096, subd. 1, 152.021, subd. 2a, 609.175, subd. 2 (2000); *State v. Olkon,* 299 N.W.2d 89, 104 (Minn.1980).

"Conspiracy need not be established by direct evidence, but may be inferred from the circumstances." *State v. Watson*, 433 N.W.2d 110, 114–15 (Minn.App.1988), *review denied* (Minn. Feb. 10, 1989).

Here, there is insufficient evidence in the record from which the jury could reasonably infer that Hatfield entered into an actual agreement with anyone for the purpose of manufacturing methamphetamine. At trial, the state's theory was that Hatfield had conspired with Theobald for the purpose of manufacturing methamphetamine.

The only agreement or concerted action between Hatfield and Theobald was the transportation of the red cooler and propane tank from Nowak's neighbor's residence to Hatfield's temporary residence. Theobald testified that he brought the cooler and the altered tank to Hatfield's temporary residence at Hatfield's direction. However, Theobald testified that he did not know the contents of the cooler or the altered propane tank. No contrary evidence was presented by the state.

Even if the cooler and the propane tank contained items that could be used in the manufacture of methamphetamine, an innocent courier cannot be considered a co-conspirator. See *Sisson v. Triplett*, 428 N.W.2d 565, 572 n. 6 (Minn.1988) (opining that a person who delivers items without knowledge of their intended use could not be criminally implicated as a conspirator). There was no evidence submitted that Theobald knew that Hatfield intended to use the items provided to him by Theobald for the manufacture of methamphetamine.

Further, no evidence was presented to the jury that Theobald and Hatfield had discussed manufacturing methamphetamine. Where there is no evidence that an alleged co-conspirator had actual knowledge of any of the facts known to the person charged with conspiracy, a common

purpose or conspiracy to commit an illegal act cannot be established. *Burns*, 215 Minn. at 188–89, 9 N.W.2d at 521. Because there was no evidence presented to the jury establishing that Hatfield had entered into an agreement with Theobald for the purpose of manufacturing methamphetamine, we reverse his conviction for conspiracy to manufacture methamphetamine in violation of Minn.Stat. §§ 152.096, subd. 1, 152.021, subd. 2(a).

## II.

Hatfield challenges his charge and conviction for child endangerment under Minn.Stat. § 609.378, subd. 1(b)(1) (2000). A parent is guilty of child endangerment if the parent intentionally or recklessly causes or permits their child "to be placed in a situation likely to substantially harm the child's physical, mental, or emotional health or cause the child's death." Minn. Stat. § 609.378, subd. 1(b)(1).

Hatfield asserts that under this section, in order for him to be convicted, there must be some showing that the children suffered actual and grievous harm. For this proposition, he cites *State v. Schreiber*, 558 N.W.2d 474 (Minn.1997) (children shot by parent) and *State v. Auchampach*, 540 N.W.2d 808 (Minn.1995) (children witnessed father murder mother). While the defendants in both *Schreiber* and *Auchampach* were convicted of child endangerment under Minn.Stat. § 609.378, neither *Schreiber*, nor *Auchampach*, addresses the issue of child endangerment or applies Minn.Stat. § 609.378. *Schreiber*, 558 N.W.2d at 475 (analyzing the propriety of trial court decisions regarding mental illness and trial bifurcation); *Auchampach*, 540 N.W.2d at 810–11 (analyzing the propriety of trial court decisions regarding jury instructions and definitions within the domestic homicide statute). Therefore,

neither *Schreiber* nor *Auchampach* are dispositive in this case. *Harvey v. Dots, Inc.*, 561 N.W.2d 192, 194 (Minn.App.1997) (prior cases are not authority on the issue if that issue was not presented to the court).

◼ Contrary to Hatfield's assertions, the mere potential for substantial harm to children is sufficient to constitute child endangerment. Section 609.378 subdivision 1(b)(1) provides that a child is endangered when the child is "placed in a situation *likely* to substantially harm the child's physical, mental, or emotional health or cause the child's death." *Id.* (emphasis added).

Hatfield stored anhydrous ammonia in an altered propane tank in the proximity of his children. At trial, there was testimony that (1) a propane tank altered to contain anhydrous ammonia poses a particular danger because the ammonia will begin to leak from the tank after a period of time, usually ten days; (2) an altered tank, if tipped over, could fly around a room, release a toxic cloud of ammonia, and possibly combust; (3) anhydrous ammonia can cause physical reactions such as burning sensation in the eyes, shortness of breath, and even upper respiratory damage and pulmonary edema; and (4) anhydrous ammonia is extremely combustible.

◼ While we recognize that there may be legitimate reasons for storing a hazardous chemical, the situation presented here posed a particular danger to the children as established by the fact that the officers suffered from a burning sensation in the eyes and difficulty in breathing upon entering the home. Furthermore, storing this chemical, in addition to the other chemicals and equipment necessary for the manufacture of methamphetamine was conduct likely to substantially harm his children's physical health. *See, e.g., Larson v. Larson*, 400 N.W.2d 379, 381 (Minn.

App.1987) (finding for purposes of child custody modification that mother's escalating drug use in front of the children resulted in increasingly harmful effects on the children); *Gustafson v. Gustafson*, 376 N.W.2d 290, 293 (Minn.App.1985) (finding of child endangerment for purposes of custody modification was supported where father admitted problems with drugs and alcohol). Viewed in the light most favorable to the conviction, we conclude that the evidence was sufficient to permit the jury to find Hatfield guilty of child endangerment.

## DECISION

Absent a showing of an actual agreement between Hatfield and Theobald to manufacture methamphetamine, Hatfield cannot be convicted for conspiracy to manufacture methamphetamine in violation of Minn.Stat. §§ 152.096, subd. 1, 152.021, subd. 2a (2000). Therefore, we reverse Hatfield's conspiracy conviction. However, Hatfield's conviction for child endangerment in violation of Minn.Stat. § 609.378, subd. 1(b)(1) (2000) is supported by the evidence because Hatfield permitted his children to be in the proximity of an extremely hazardous chemical that caused persons to suffer physical harm and was likely to cause substantial harm to the children. Accordingly, we affirm Hatfield's child endangerment conviction.

**Affirmed in part and reversed in part.**