*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1164**

State of Minnesota,
Respondent,

vs.

Alfonso Domingo Martinez,
Appellant.

**Filed May 4, 2015
Affirmed
Hudson, Judge**

Dakota County District Court
File No. 19HA-CR-13-3346

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James Backstrom, Dakota County Attorney, Heather Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Charles F. Clippert, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and

Bjorkman, Judge.

UNPUBLISHED OPINION

**HUDSON**, Judge

Appellant challenges the sufficiency of the evidence to support his convictions of conspiracy to distribute a controlled substance and aiding and abetting the sale of a controlled substance. Because the circumstantial evidence is sufficient to support the convictions, we affirm.

## FACTS

After a bench trial, the district court found appellant Alfonso Domingo Martinez guilty of one count of conspiracy to commit first-degree controlled substance crime, sale, and one count of aiding and abetting first-degree controlled substance crime, possession.

At trial, an agent with the Minnesota Bureau of Criminal Apprehension (BCA) testified that he received information about a potential sale of methamphetamine and acted as an undercover agent, calling an identified cell-phone number to arrange a purchase. He spoke to J. M.-V., who instructed him to go to a specified intersection on Fremont Avenue North and call that number again. The agent proceeded to that location and made the phone call; the same person answered. Two men, G. C.-G. and J. M.-V., exited a residence at the intersection and entered the agent's vehicle. The agent paid J. M.-V. $800 for one ounce of methamphetamine and negotiated a purchase of four pounds of methamphetamine the next day, discussing the use of code words about purchasing a car. That evening, the agent called J. M.-V. again and stated that he would buy four "cars." The next morning, on a Drug Enforcement Agency cell phone, the agent traded

text messages with J. M.-V. relating to purchasing "cars." He then initiated a recorded phone call with J. M.-V. and arranged to meet him at a McDonald's in Lakeville.

Another BCA agent testified that, the next day, he set up surveillance of the Fremont Avenue residence and observed a Jaguar and a white van drive up within a minute of each other. The Jaguar pulled ahead to make room for the van, and men exited both vehicles. Those men, who included Martinez, shook hands with two other men who appeared to have come from the residence. They all stood talking on the curbside for several minutes, with one man gesturing as if giving directions. A few minutes later, two men entered each vehicle and drove away.

A Hennepin County deputy conducted surveillance on the moving vehicles. She followed them as they drove south on 35W in tandem, maintaining no more than a car length apart, with the van in the lead. The deputy continued the surveillance until a state trooper pulled the Jaguar over in a prearranged stop.

The trooper conducting that stop spoke to the driver, Martinez, and asked whether he was traveling with the van because he was following so closely. Martinez stated that he was waiting for an opportunity to pass and produced a valid driver's license and car registration and an outdated insurance card. The trooper testified that Martinez "seemed really on edge" and "blurted out" without being asked that they were going to Mystic Lake Casino. The trooper had Martinez sit in the squad car and verified that he had valid insurance. The trooper asked with whom Martinez was traveling, and Martinez responded, "Juan," but could not provide Juan's last name. When the trooper asked where Juan was from, Martinez stated that he thought he was from Chicago. They

3

returned to the Jaguar, and the passenger, J. M.-V., produced a Mexican identification card and said that he was from Mexico. The trooper then gave Martinez a warning for following too closely and asked permission to search the Jaguar.

By that time, another state trooper had arrived and conducted a canine search, which revealed a .40-caliber loaded handgun under the Jaguar's passenger seat and a white powder, identified as a cutting agent for narcotics, in a sealed plastic bag behind the rear passenger seat. Martinez acknowledged responsibility for the contents of the Jaguar.

The second state trooper noticed that the Jaguar appeared to be traveling with the van and was following it at an unsafe distance. He observed the stop of the Jaguar and then stopped the van, identifying its occupants as G. C.-G., the passenger, and O.S., the driver. Both appeared nervous, and O.S. stated that he did not believe that there was insurance on the van, but he did not know for sure. G. C.-G. stated that they were going to a roofing job and that the driver's first name was Octavio, but he did not know his last name. The trooper issued a citation for no insurance and obtained permission to search the van. A canine alerted to the possible presence of drugs, and the men were detained. O.S. had on his person about $2,900 in cash, a round of ammunition for a .40 caliber handgun, and a small amount of suspected marijuana. The search of the van recovered suspected methamphetamine packaged in clear plastic bags in the rear cargo area. The substance in one of the bags tested positive for 444 grams of methamphetamine.

In a post-arrest interview, Martinez told police that "Juan" had called him and said that he needed a ride to pick up some money, that Martinez had showed up alone at the

4

Fremont Avenue address, and that he was not following or driving in tandem with another vehicle. He said nothing about going to a casino and stated that he did not see the van after leaving Minneapolis.

J. M.-V. testified that he had pleaded guilty to, and was convicted of, first-degree controlled substance crime a few weeks before Martinez's trial, but that he "[didn't] know anything." Although advised of a possible prosecution for perjury, he declined to answer questions, and the district court found him in contempt of court. The district court found Martinez guilty of both counts and sentenced him to 120 months on the conspiracy offense. This appeal follows.

## D E C I S I O N

## I

Martinez argues that the circumstantial evidence is insufficient to convict him of conspiracy to commit first-degree controlled-substance crime. Our review on a claim of insufficient evidence is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the fact-finder to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the [fact-finder] believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). This court will not disturb a verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004). When reviewing

the sufficiency of the evidence, we apply the same standard to bench and jury trials. *In re Welfare of M.E.M.*, 674 N.W.2d 208, 215 (Minn. App. 2004).

In reviewing a conviction based on circumstantial evidence, we apply a two-step analysis. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). First, we "identify the circumstances proved," deferring to the fact-finder's acceptance of proof of those circumstances and rejection of evidence that conflicted with those circumstances. *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013). "We recognize that the trier of fact is in the best position to determine credibility and weigh the evidence." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). In the second step, we "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved" to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). We do not defer to the fact-finder's choice between reasonable inferences. *Id.* "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Hanson*, 800 N.W.2d at 622 (quotation omitted).

A person is guilty of engaging in a conspiracy if that person "conspires with another to commit a crime and in furtherance of the conspiracy one or more of the parties does some overt act in furtherance of such conspiracy." Minn. Stat. § 609.175, subd. 2 (2012). "The elements of the underlying crime need not be proven to establish conspiracy since the crime itself need not be proven to prove conspiracy." *State v. Tracy*, 667 N.W.2d 141, 146 (Minn. App. 2003). But "both knowledge of an agreement and

6

evidence of intent to commit the crime or act that is the object of the conspiracy" are required. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001). As long as the evidence objectively shows an agreement to commit a crime, the state need not prove the existence of a formal agreement. *State v. Hatfield*, 639 N.W.2d 372, 376 (Minn. 2002). And direct evidence of a conspiracy is not required if a conspiracy may be inferred from the circumstances. *Id.* If "several persons commit separate acts which form parts of a connected whole, an inference of conspiracy—that there was concert in both planning and execution—is permissible." *State v. Burns*, 215 Minn. 182, 189, 9 N.W.2d 518, 522 (1943).

Martinez argues that the evidence did not "form a complete chain" leading only to his guilt because the record did not contain evidence connecting him to an agreement to distribute controlled substances. Specifically, he points out that none of his possessions was found at the Fremont Avenue residence, he was seen only briefly greeting the other men outside that residence, no text messages or emails link him to those men, and no DNA or fingerprint evidence connected him with a conspiracy.

But a defendant must demonstrate more than mere conjecture to overturn a conviction based on circumstantial evidence. *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998). The state proved the following circumstances: (1) Martinez arrived at the location of a previous day's drug purchase; (2) he greeted several men there and appeared to receive directions; (3) he drove a Jaguar with one of the men, in tandem with a van containing the other men, along the route to a planned drug purchase; (4) police recovered a large quantity of drugs from the van; and (5) he acknowledged responsibility

7

for the Jaguar's contents, which included a loaded handgun and a substance frequently used as a cutting agent for drugs. These circumstances proved are not consistent with a reasonable hypothesis that he did not know of an agreement to commit the crime of selling illegal drugs and did not have a common purpose, along with the other men, to commit that crime. *See Burns*, 215 Minn. at 189, 9 N.W.2d at 521 (requiring a "common purpose" to commit the crime at the heart of the conspiracy and that "each of them understood that the others had that purpose"). Therefore, we conclude that the circumstantial evidence is sufficient to sustain Martinez's conviction of conspiracy to commit first-degree controlled-substance crime.

## II

Martinez challenges the sufficiency of the evidence to sustain his conviction of aiding and abetting first-degree controlled-substance crime. A person is guilty of aiding and abetting the crimes of another if that person "intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2012).

To satisfy the intent element of aiding and abetting an offense, the state must prove the defendant "had knowledge of the crime and intended his presence or actions to further the commission of that crime." *State v. Hawes*, 801 N.W.2d 659, 668 (Minn. 2011) (quotation omitted). Passive acquiescence, inaction, or a mere presence at the scene of a crime does not rise to the level of criminal culpability, but the state need not prove that the defendant actively participated in the overt act constituting the substantive offense. *State v. Ostrem*, 535 N.W.2d 916, 924 (Minn. 1995). A fact-finder may infer

8

the requisite intent from a variety of facts, including the defendant's presence at the scene of the crime, a close association with the principal offender before and after the crime, a lack of objection or surprise under the circumstances, and flight with the principal offender from the scene of the crime. *Hawes*, 801 N.W.2d at 668.

Martinez argues that the state has failed to prove that he knew that he was driving J. M.-V. to a drug transaction. He points out that his mere nervousness when his vehicle was stopped is insufficient to establish aiding-and-abetting liability. *See State v. Burbach*, 706 N.W.2d 484, 490 (Minn. 2005) (noting that nervous behavior alone did not support a reasonable articulable suspicion of criminal activity). But the district court considered additional facts establishing Martinez's close association in time and place with the other men when they were transporting a large quantity of drugs to an arranged drug transaction. Further, the district court found that Martinez's assertion that he did not know the purpose of the trip was incredible, based on the inconsistent evidence of his position following the van and his statement that he did not see the van after leaving Minneapolis, as well as the inconsistency of his statement to the trooper—that he was going to the casino—with his later statement to police—that he was taking his passenger to pick up money, with no reference to a casino. *See Silvernail*, 831 N.W.2d at 599 (stating that even in cases involving circumstantial evidence, the fact-finder is in the best position to evaluate the credibility of the evidence). Based on the circumstances proved, Martinez cannot show the existence of an alternative rational hypothesis that he was unaware of the crime and did not intend his presence or actions to further its commission.

9

*See Hawes*, 801 N.W.2d at 668. The evidence is sufficient to sustain his conviction of aiding-and-abetting first-degree controlled-substance crime.

**Affirmed.**