STATE of Minnesota, Respondent,

v.

L. Craig WATSON, Appellant.

No. CX–88–573.

Court of Appeals of Minnesota.

Dec. 13, 1988.

Review Denied Feb. 10, 1989.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, Michael Junge, McLeod County Atty., Peter Kasal, Asst. County Atty., Glencoe, for respondent.

Irene Fay Nosow, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, C.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge

L. Craig Watson appeals his conviction of two counts of theft, one count of diversion of charitable gambling funds and one count of conspiracy. A jury found Watson guilty of all counts and the trial court placed him on three years probation with the condition that Watson perform $10,000 worth of community service through chemical dependency counseling. Watson claims the charitable gambling statute is unconstitutionally vague, that the evidence presented at trial was insufficient to support convictions on each of the charges, and that the trial court committed prejudicial evidentiary errors which warrant a new trial. We affirm.

## FACTS

Watson is a registered nurse and chemical dependency counselor who runs the Counseling Center of Waconia. The Counseling Center is a for-profit corporation providing chemical dependency counseling to residents in the Waconia area. Watson is its sole shareholder. Allegedly concerned that he could not afford to provide counseling to persons who were unable to pay, Watson and his friend Ray Nordine, a member of the Counseling Center's advisory board, decided to run a charitable gambling operation. The operation would be run through Family Plus, Nordine's non-profit counseling organization in the Twin Cities.

Because the Counseling Center is a for-profit organization, it was unable to obtain a license for charitable gambling. Nordine and Watson arranged for Family Plus to obtain the license. As originally set up under the charitable gambling regulations, all money from the gambling operation would go into a Family Plus account in St. Paul. Expenses related to the gambling operation would be paid by Family Plus, and profits from the operation would go to a program referred to as the Community Action Assistance Program (CAAP). Watson could then bill CAAP for counseling services rendered through the Counseling Center.

Family Plus obtained a license to operate charitable gambling at Biscay Liquors in Biscay, Minnesota, and pulltab operations began in February 1986. The owners understood that Family Plus was the organization running the pulltab operation and that profits from the game would be used to provide counseling for needy people in the McLeod County area.

From the beginning, the system did not function as described. The Biscay operation grossed approximately $45,000 in its year of operation, but only $8,750 was transferred from the gambling operation to Family Plus. The rest of the money was never handled by the licensed organization, but was allegedly applied directly to expenses and CAAP reimbursements by Watson himself. Watson testified that he often paid gambling expenses directly from the Counseling Center's checking account and then reimbursed himself from gambling proceeds. He did not bill CAAP for counseling services rendered, but rather withdrew money to pay for them directly from the gambling account. Watson alone determined which clients qualified for CAAP assistance. His daughter/bookkeeper then applied any available funds from the gambling operation to these accounts. At least one account, due from 1985 before the gambling operation's inception, was paid with gambling proceeds. If the money drawn from CAAP funds exceeded the amount owed by the patients or if insurance policies covered costs already paid by CAAP, the excess was allegedly reapplied to other unpaid patient accounts. Many of these funds were reapplied after Watson was charged.

Three transactions in particular gave rise to this prosecution. In the summer of 1986, Watson withdrew $5,500 for reasons he could not specifically recall. That fall, two checks for $1,538.60 and two for $1,000 were written to Watson and Ray Nordine as payment for behavior seminars which they conducted in September and December. Finally, a $10,000 check was written on the Biscay account and deposited in the Counseling Center savings account on November 11, 1986, two weeks before Watson departed for a European vacation. The

check was allegedly to reimburse Watson for amounts that he felt he had earned for counseling services he had provided.

Joy Harris was the gambling manager at Family Plus until October 1986. She applied for the license for the Biscay operation but was then told by Ray Nordine that she was not to be involved in that operation. When Harris expressed concern about the accounting procedures of the Biscay operation, she was again warned by Ray Nordine to stay out of the Biscay account. Harris was fired in October 1986. At her unemployment compensation hearing Nordine accused her of taking $19,000 in Family Plus gambling money.

The Charitable Gambling Board began investigating the Family Plus operations in November 1986. Several reports had been filed late and the Board felt that the description of the lawful purposes for which the gambling money was used was inadequate. After a Board employee was not allowed to inspect Family Plus records, matters were turned over to the McLeod County Attorney's office for investigation in December 1986.

The county charged Watson with two counts of violating Minn.Stat. § 609.52, subd. 2 (1986), for obtaining more than $2,500 in cash from the gambling operation at Biscay Liquors for his own personal use and for uses other than charitable purposes, and for obtaining $10,000 in cash from Family Plus without its consent. Watson was also charged under Minn.Stat. §§ 349.22 and 349.15 with diversion of profits from charitable gambling, and under Minn.Stat. § 609.175 (1986) with conspiracy with Ray Nordine to commit theft and divert charitable gambling funds for personal uses. Ray Nordine also faces conspiracy charges.

After almost two weeks of trial in October 1987, the jury returned guilty verdicts on all four counts. The trial court chose not to sentence Watson on any of the convictions. Instead, it stayed imposition of sentence and placed Watson on probation for three years, conditioned on his performing $10,000 worth of community service.

## ISSUES

1. Are Minn.Stat. §§ 349.15 and 349.12, subd. 11 (1986), unconstitutionally vague?

2. Was the evidence sufficient to support the conviction on each of the charges?

3. Were certain trial court evidentiary rulings prejudicial to Watson so as to warrant a new trial?

## DISCUSSION

### I

■ Watson was charged with diverting charitable gambling proceeds for unlawful purposes under the Minnesota Charitable Gambling statute. He claims that the statute is unconstitutionally vague because the use of the term "lawful purposes" and its definition in the statute fail to give a person of ordinary intelligence fair notice of what conduct is disapproved. Additionally, he contends the statute allows a jury to determine guilt based on subjective views of the value of particular uses of the proceeds.

The state argues that the statute is sufficiently specific and understandable so that Watson should have known that his conduct was illegal. As a businessperson, the state argues, Watson could be expected to know that charitable gambling is subject to a comprehensive regulatory structure. The state claims that to require a legislature to be more specific while still including the many deserving purposes proposed by the wide variety of charitable organizations in this state would be impossible. We agree.

A duly enacted statute carries with it a presumption of constitutionality. *State v. Hamm,* 423 N.W.2d 379, 380 (Minn.1988). A statute should be declared unconstitutional only if absolutely necessary and then only with great caution. *City of Richfield v. Local No. 1215,* 276 N.W.2d 42, 45 (Minn. 1979). The burden of proof is on the party challenging the statute to demonstrate beyond a reasonable doubt that it violates a constitutional provision. *Hamm,* 423 N.W. 2d at 380. A statute is unconstitutionally vague if it

fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

*United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

Chapter 349 of Minnesota Statutes (1986) regulates charitable gambling in this state. Profits from lawful gambling may be expended only for lawful purposes or for expenses related to the gambling operation as authorized by the conducting organization. Minn.Stat. § 349.15 (1986). Minn. Stat. § 349.12, subd. 11 (1986), defines lawful purpose as

one or more of the following: (a) benefiting persons by enhancing their opportunity for religious or educational advancement, by relieving or protecting them from disease, suffering or distress, by contributing to their physical well-being, by assisting them in establishing themselves in life as worthy and useful citizens, or by increasing their comprehension of and devotion to the principles upon which this nation was founded; (b) initiating, performing, or fostering worthy public works or enabling or furthering the erection or maintenance of public structures; (c) lessening the burdens borne by government or voluntarily supporting, augmenting or supplementing services which government would normally render to the people; or (d) the improving, expanding, maintaining or repairing real property owned or leased by an organization.

The statute also creates a charitable gambling control board, Minn.Stat. § 349.151, and provides that the board shall establish rules for the administration of the use of profits. Minn.Stat. § 349.15. The rules are codified at Minn.R. 7860 (1985). Finally, Minn.Stat. § 349.22, subd. 1, provides that "[a]ny other violation of sections 349.11 to 349.214 is a gross misdemeanor."

Statutes regulating charities must be inclusive so as to cover many varied charitable organizations. The fact that a statute is inclusive does not make it vague. Definitions of charitable or lawful purposes, therefore, are by nature general and more inclusive. For example, the Internal Revenue Service defines charitable as including

[r]elief of the poor and distressed or of the under-privileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes or (i) to lessen neighborhood tensions; (ii) to eliminate prejudice and discrimination; (iii) to defend human and civil rights secured by law; or (iv) to combat community deterioration and juvenile delinquency.

26 C.F.R. § 1.501(c)(3)–1(d)(2).

Minnesota's sales and use tax regulations define charitable in equally general terms:

"Charitable" is used in its *generally accepted legal sense* and includes relief of the poor, underprivileged, distressed, and defective, the care of the sick, the infirm, or the aged; erection or maintenance of public buildings and monuments; lessening of the burdens of government; lessening of neighborhood tensions; elimination of prejudice and discrimination; defense of human and civil rights secured by law; and combating of community deterioration and juvenile delinquency.

Minn.R. § 8130.6200, subp. 2 (1987) (emphasis added).

The definition of "lawful purposes" in the Minnesota Charitable Gambling Statute is similar in tone and generality to the above-noted definitions, which have never been found unconstitutional for vagueness. If anything, it is more specific and offers more guidance to the person of ordinary intelligence. Both Watson and the jury could understand what conduct was proscribed by the charitable gambling statute. The similarity of the "lawful purposes" definition to the generally accepted legal definition of "charitable" leads us to hold

that the statute is not unconstitutionally vague.

## II

Watson asserts that the evidence presented by the state was insufficient as a matter of law to support the convictions against him. In Minnesota, an appellate court reviewing a claim of insufficiency of the evidence must view the evidence in the light most favorable to the prosecution and assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988). The court must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude the defendant was guilty of the offense charged. *Id.*

A conviction based on circumstantial evidence, however, may stand only when the facts and circumstances disclosed by that evidence form a complete chain which, in light of all the evidence, leads so directly to the guilt of the accused as to exclude, beyond a reasonable doubt, any reasonable inference other than that of guilt. *State v. Anderson*, 379 N.W.2d 70, 75 (Minn.1985), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986).

■ Watson himself admits that he and the Family Plus gambling operation at Biscay Liquors violated numerous charitable gambling rules. He claims, however, that while the evidence might prove these violations, the state did not prove diversion of the funds for unlawful purposes.

The jury convicted Watson on all counts after hearing two weeks of testimony. Watson presented character witnesses to attest to his honesty. Both sides presented extensive evidence about what happened to the gambling proceeds after they were collected at Biscay Liquors. While there was no direct evidence that the money went to Watson's personal use, there was sufficient circumstantial evidence for the jury to infer that Watson was using gambling proceeds for other than lawful purposes.

■ We agree with the jury, and we hold that it cannot be a lawful purpose under Minn.Stat. § 349.15 if a gambling operation is managed by an ineligible organization. Watson and the Counseling Center, a for-profit organization, handled all the personnel, the collection of the gambling money, the payment of expenses, and the distribution of the Biscay gambling operation profits after Family Plus obtained the license. In essence, Watson and Ray Nordine found a way to circumvent the statutory scheme by arranging for an eligible, non-profit agency to be used as a "front" for gambling operations for an unlicensed, for-profit organization.

This is not to say, however, that the program could not have been achieved through lawful means. Family Plus, as the licensed organization, could have operated the gambling site, collected the profits and applied them to pay for the chemical dependency counseling services of a for-profit corporation such as the Counseling Center. Any licensee which is a buyer of services is responsible for following the procedures established by the charitable gambling rules and properly supervising all operations; it may not abdicate its responsibility.

The evidence was sufficient to prove that Family Plus did not manage the gambling operation according to the statute and that Craig Watson was able to circumvent the law and use charitable gambling proceeds for his own purposes.

Watson also claims that the evidence was insufficient to support his convictions of theft under Minn.Stat. § 609.52 (1986) and of conspiracy to divert charitable gambling funds for personal use under Minn.Stat. § 609.175 (1986). The record indicates that the state presented sufficient evidence for the jury to infer that Craig Watson had the requisite intent to deprive another of property and that he actually took more than $2,500 in charitable gambling funds. Likewise, the evidence presented supports the inference that Craig Watson and Ray Nordine acted together to accomplish the diversion of the charitable gambling funds. Conspiracy need not be established by direct evidence, but may be inferred from the

circumstances. *State v. Burns*, 215 Minn. 182, 189, 9 N.W.2d 518, 521 (1943). Therefore, we hold that the evidence was sufficient to support both of the theft and the conspiracy convictions.

### III

 Watson appeals five of the trial court's evidentiary rulings: the narrative form of testimony by Roger Franke of the Charitable Gambling Control Board, which included legal opinions; the admission of checks which were characterized by the prosecutor as "forged;" the admission of records from a different gambling account which had not been produced prior to trial; the admission of statements by Ray Nordine in violation of the co-conspirator rule; and the hearsay and opinion testimony of investigator James Newes. Watson contends these evidentiary errors individually and in combination prejudiced the defense, deprived him of a fair trial and warrant a new trial.

A new trial will not be ordered unless the challenged admission of evidence is so prejudicial that it amounts to denial of a fair trial and the errors substantially influenced the jury's decision to convict. *State v. Loebach*, 310 N.W.2d 58, 64 (Minn.1981). The party claiming the error bears the burden of showing both the error and the resulting prejudice. *Id.* When the errors are of no vital consequence and do not materially affect the substantial rights of the accused, and there is evidence to support the verdict, the reviewing court will not disturb the conviction. *State v. Wofford*, 262 Minn. 112, 120, 114 N.W.2d 267, 272 (1962).

The trial court rulings were not so prejudicial, nor do they so materially affect Watson's substantial rights, as to warrant a new trial. Even viewed cumulatively, the possible prejudice resulting from the admission of this evidence does not amount to denial of a fair trial.

### DECISION

We hold that the Minnesota Charitable Gambling statute is constitutional, and we affirm the jury's finding that Watson is guilty of theft, diversion of charitable gambling funds and conspiracy. The evidence was sufficient to support the verdict, and the evidentiary rulings did not deny Watson a fair trial.

AFFIRMED.