(No. 89780.—

THE PEOPLE *ex rel.* JAMES E. RYAN, Attorney General of Illinois, Appellant, v. THE WORLD CHURCH OF THE CREATOR *et al.*, Appellees.

*Opinion filed November 21, 2001.*

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of Chicago, of counsel), for the People.

Glenn Greenwald, of Greenwald, Christoph & Holland, P.C., of New York, New York (Gary L. Shilts, of Naperville, of counsel), for appellees.

JUSTICE GARMAN delivered the opinion of the court:

The issue in this case is whether the Solicitation for

Charity Act (Solicitation Act) (225 ILCS 460/0.01 through 23 (West 1998)) is unconstitutionally vague on its face, as violative of the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV). The circuit court of Cook County held the statute unconstitutional and dismissed the Attorney General's complaint against defendants for failure to register under the Solicitation Act. The Attorney General appealed directly to this court. 134 Ill. 2d R. 603. We now reverse the circuit court's judgment.

## BACKGROUND

The Solicitation Act requires every "charitable organization," with exceptions not relevant here, that solicits or intends to solicit contributions from persons within Illinois to file with the Attorney General a registration statement providing specified information. 225 ILCS 460/2(a) (West 1998). The Solicitation Act defines "[c]haritable organization" in pertinent part as:

"[A] benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such which solicits and collects funds for charitable purposes ***." 225 ILCS 460/1(a) (West 1998).

The Solicitation Act defines "[c]haritable purpose" as "[a]ny charitable, benevolent, philanthropic, patriotic, or eleemosynary purpose." 225 ILCS 460/1(f) (West 1998).

Annual reports must be filed with the Attorney General setting forth detailed information concerning receipts and expenses. 225 ILCS 460/4 (West 1998). When the Attorney General has reason to believe that a charitable organization is operating in violation of the Solicitation Act, he may seek an injunction prohibiting the organization from continuing to solicit or collect funds. 225 ILCS 460/9(c) (West 1998). In addition, any organization that violates the Solicitation Act shall, at the request of the Attorney General, forfeit any monies received through solicitation (225 ILCS 460/9(h) (West

1998)) and may be subject to punitive damages (225 ILCS 460/9(g) (West 1998)). Persons and organizations failing to register under the Solicitation Act or whose registration is canceled by the Attorney General for violation of the Solicitation Act are subject "to injunction, to removal, to account, and to appropriate other relief before the circuit court exercising chancery jurisdiction." 225 ILCS 460/2(i) (West 1998). In addition, the court "shall" impose a civil penalty of not less than $500 and not more than $1,000 against such person or organization. 225 ILCS 460/2(i) (West 1998). The Solicitation Act also provides civil and criminal penalties for professional fund-raisers found to be in violation of the Solicitation Act. 225 ILCS 460/6(g), (h) (West 1998).

On July 14, 1999, the Attorney General filed a complaint against defendants, The World Church of the Creator (World Church) and Matthew Hale. The World Church is an organization that exists, according to a copy of its literature attached to the complaint, to promote the survival, expansion, and advancement of the white race. Count I sought a declaratory judgment that the World Church was a charitable organization subject to the Solicitation Act. It was alleged that the World Church held itself out to be a religious not-for-profit unincorporated association and that it was managed and controlled by Hale. The complaint alleged that defendants sought members and solicited payment of membership dues and money from the general public through an Internet website and through flyers offering for sale books, materials, and merchandise. In these solicitations, defendants suggested that purchases would benefit the not-for-profit cause of the World Church, thus giving it the appearance of a charitable organization as defined in the Solicitation Act and subjecting it to the statute's registration requirements. Count I requested that the World Church be declared to be engaged in charitable solicitation of the

public and, therefore, subject to the Solicitation Act. Count II of the complaint requested a finding that defendants had violated the Solicitation Act and an injunction prohibiting defendants from further soliciting funds and from disbursing or transferring any assets without court approval. The prayer for relief also requested that the court freeze the assets of defendants, order them to account for the funds collected from their solicitation on behalf of the World Church, and impose a $1,000 fine.

Defendants filed a motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1998)), claiming that the Solicitation Act is unconstitutionally vague on its face, in that it fails to adequately define the terms "charitable organization" and "charitable purpose."

In a memorandum opinion filed on February 8, 2000, the circuit court granted defendants' motion. Relying on federal cases, the court found that the definition of "charitable organization" in the Solicitation Act does not guide the Attorney General in determining which organizations are subject to the provisions of the Solicitation Act. The court stated that the terms "benevolent, philanthropic, patriotic, or eleemosynary" used to define "charitable organization" are themselves undefined and so generic as to fail to provide adequate notice as to which organizations may be subject to the Solicitation Act. The court also expressed concern as to the Attorney General's unbridled discretion in determining which organizations are subject to the Solicitation Act and the potential threat to protected first amendment activity. The court determined that the Solicitation Act does not meet the heightened standard of precision required of legislative enactments that regulate the first amendment right to freedom of speech. The circuit court denied the Attorney General's motion to reconsider and this direct appeal followed.

## ANALYSIS

All statutes are presumed to be constitutionally valid. *People v. Sanders*, 182 Ill. 2d 524, 528 (1998). It is the court's duty to construe a statute in a manner upholding its constitutionality, if such a construction is reasonably possible. *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997). We review *de novo* the circuit court's order granting defendants' section 2—615 motion to dismiss the Attorney General's complaint (*Neade v. Portes*, 193 Ill. 2d 433, 439 (2000)), as well as the court's determination of the Act's unconstitutionality (*People v. Maness*, 191 Ill. 2d 478, 483 (2000)).

It is well settled that the first amendment's guarantee of freedom of speech encompasses solicitation of funds. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 633, 63 L. Ed. 2d 73, 85, 100 S. Ct. 826, 834 (1980). Defendants argue that, because the Solicitation Act regulates speech, it must meet a heightened standard of precision. See *National Ass'n for the Advancement of Colored People v. Button*, 371 U.S. 415, 432-33, 9 L. Ed. 2d 405, 417-18, 83 S. Ct. 328, 337-38 (1963); *Hynes v. Mayor & Council*, 425 U.S. 610, 620, 48 L. Ed. 2d 243, 253, 96 S. Ct. 1755, 1760 (1976) (stricter standards of permissible statutory vagueness may be applied to a statute that has a " 'potentially inhibiting effect on speech,' " quoting *Smith v. California*, 361 U.S. 147, 151, 4 L. Ed. 2d 205, 210, 80 S. Ct. 215, 217-18 (1959)). However, not all laws that regulate speech are subject to this higher standard. "Content neutral regulation of protected speech is subject to 'an intermediate level of scrutiny.' " *American Target Advertising, Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000), quoting *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 642, 129 L. Ed. 2d 497, 517, 114 S. Ct. 2445, 2459 (1994). In determining whether a regulation is content neutral, the main inquiry is whether the state has adopted the regulation because of its disagreement

with the content of the message sought to be conveyed. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 105 L. Ed. 2d 661, 675, 109 S. Ct. 2746, 2754 (1989). Government regulation of expressive activity is content neutral so long as it is " '*justified* without reference to the content of the regulated speech.' " (Emphasis in original.) *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 89 L. Ed. 2d 29, 38, 106 S. Ct. 925, 929 (1986), quoting *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 48 L. Ed. 2d 346, 364, 96 S. Ct. 1817, 1830 (1976).

In *American Target*, a professional fund-raising corporation sought to have Utah's Charitable Solicitations Act declared unconstitutional. Among other requirements, that law required all professional fund-raising consultants to register with the state and obtain permits. To obtain such a permit, the consultant must complete a written application, pay an annual fee and post a bond or letter of credit. Plaintiff did not comply with the registration requirements and was consequently barred from assisting Judicial Watch, a nonprofit organization, with its mailing campaign in Utah. *American Target*, 199 F.3d at 1246. The court of appeals found that the law was a content-neutral regulation of protected speech and was, therefore, subject to an intermediate level of scrutiny. The law was designed to control the secondary effects of professional solicitations, *i.e.*, increased fraud and misrepresentation. It simply facilitated oversight of the mailers' backgrounds and methods. The court noted that subjecting the law to intermediate scrutiny required the state to show that the law "(1) serves a substantial governmental interest and (2) is 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms.' " *American Target*, 199 F.3d at 1247, quoting *Schaumburg*, 444 U.S. at 637, 63 L. Ed. 2d at 87-88, 100 S. Ct. at 836.

The court of appeals further found that the mandatory registration and disclosure requirements were narrowly tailored to serve Utah's substantial interest in combating fraud, in that the law allowed Utah citizens to make informed decisions about making charitable donations, and the requirements directly promoted Utah's legitimate interest, while not unnecessarily burdening speech. *American Target*, 199 F.3d at 1248.

Here, the Solicitation Act's registration provisions apply to all entities that solicit funds for purposes defined in the Solicitation Act, except those specifically exempted. They do not in any way control the content of speech. We, therefore, conclude that the registration and reporting requirements are content neutral and the law is therefore subject to an intermediate level of scrutiny, rather than the more exacting standard urged by defendants.

Intermediate scrutiny first requires that the regulation at issue serve a substantial governmental interest. A state or municipality undoubtedly has the power to protect its citizens from fraud by regulating solicitation of funds. *Hynes*, 425 U.S. at 616-17, 48 L. Ed. 2d at 251, 96 S. Ct. at 1758-59. The Solicitation Act seeks to prevent frauds on Illinois citizens in the solicitation and use of charitable funds. *People ex rel. Scott v. Gorman*, 96 Ill. App. 3d 289, 290 (1981). To that end, violators may be subject to a prohibition on future solicitation of funds (225 ILCS 460/9(c) (West 1998)), forfeiture of any monies received through solicitation (225 ILCS 460/9(h) (West 1998)), civil penalties (225 ILCS 460/2(i) (West 1998)), punitive damages (225 ILCS 460/9(g) (West 1998)) and, in some instances, criminal penalties (225 ILCS 460/6(g) (West 1998)). The registration and reporting requirements may serve as a deterrent to fraudulent solicitation of funds, since those intent on defrauding the public will be less likely to do so if required to disclose identifying

information to the Attorney General. The additional deterrence provided by the registration and reporting provisions of the Solicitation Act promote Illinois' interest in protecting its citizens from fraud. Without such provisions, the State's ability to detect fraudulent solicitations would be undermined. Thus, we conclude that the registration and reporting requirements of the Solicitation Act serve a substantial governmental interest.

We now turn to the question of whether the challenged provisions of the Solicitation Act are narrowly tailored to serve this interest. Defendants claim that the Solicitation Act is not narrowly drawn and that its definitions of ''charitable organization'' and ''charitable purpose'' are unconstitutionally vague. In *Grayned v. City of Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), the United States Supreme Court explained the dangers posed by unconstitutionally vague laws:

''It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' [citation] it 'operates to inhibit the exercise of [those] freedoms.' [Citation.] Uncertain meanings inevitably lead citizens to ' ''steer far wider of the unlawful zone'' ... than if the boundaries of the forbidden areas were clearly marked.' [Citations.]'' *Grayned*, 408 U.S. at 108-09, 33 L. Ed. 2d at 227-28, 92 S. Ct. at 2298-99.

A law is unconstitutionally vague, and therefore violative of due process, when it lacks " 'terms susceptible of objective measurement' " (*Keyishian v. Board of Regents of the University of the State of New York*, 385 U.S. 589, 604, 17 L. Ed. 2d 629, 641, 87 S. Ct. 675, 684 (1967), quoting *Cramp v. Board of Public Instruction*, 368 U.S. 278, 286, 7 L. Ed. 2d 285, 291, 82 S. Ct. 275, 280 (1961)) and when persons of " 'common intelligence must necessarily guess at its meaning and differ as to its application' " (*Keyishian*, 385 U.S. at 604, 17 L. Ed. 2d at 641, 87 S. Ct. at 684, quoting *Baggett v. Bullitt*, 377 U.S. 360, 367, 12 L. Ed. 2d 377, 382, 84 S. Ct. 1316, 1320 (1964)).

The Attorney General argues that the Solicitation Act may not be declared facially invalid because it is capable of at least one valid application. He notes that during oral argument in the circuit court, counsel for defendants conceded that the Solicitation Act could validly be applied to the United Way. However, a party must establish that a statute is impermissibly vague in all of its applications only where the statute does not implicate constitutionally protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191 (1982); see *City of Chicago v. Morales*, 527 U.S. 41, 55, 144 L. Ed. 2d 67, 79, 119 S. Ct. 1849, 1858 (1999) (noting that where vagueness permeates the text of a law that infringes on constitutionally protected rights, the law is subject to a facial challenge).

The circuit court relied on three federal cases in concluding that the Solicitation Act is unconstitutionally vague. The first case, *Association of Community Organizations for Reform Now v. Golden*, 744 F.2d 739 (10th Cir. 1984), involved a city ordinance prohibiting uninvited door-to-door solicitation unless the city manager granted an exemption. Such an exemption would be granted only

if the city council determined that the solicitation was for a "charitable, religious, patriotic or philanthropic purpose or otherwise provides a service or product so necessary for the general welfare of the residents of the city that such activity does not constitute a nuisance." *Golden*, 744 F.2d at 741. The court of appeals reversed the district court's judgment in favor of the city, finding that the ordinance vested unguided discretion in the city council to grant exemptions. The court noted that the definition of the types of organizations eligible for an exemption was not specific. It found the words "charitable, religious, patriotic or philanthropic purpose" to be vague and indefinite. Such terms did not provide sufficient guidance to the city council in exercising its authority under the ordinance. The court also noted that no regulations or written interpretations of the ordinance existed. *Golden*, 744 F.2d at 748.

In *Association of Community Organizations for Reform Now v. City of Chicago*, No. 84—C—10536 (N.D. Ill. February 24, 1986) (unpublished decision), plaintiffs challenged two city ordinances that regulated solicitation activities through an application process. The city filed a motion to dismiss the complaint. The original ordinance required that an organization, for a period of one year prior to application, must have been engaged in charitable and philanthropic work. Churches were exempted from this requirement. The grant or denial of an application was left to the sole discretion of a committee of the city council. *Association of Community Organizations for Reform Now*, slip op. at 6. After suit was filed, the city replaced this ordinance with a new one that required an organization to obtain a permit prior to engaging in solicitation activities. Only those organizations that intended to solicit for "charitable purposes" were required to apply for a permit. The ordinance did not purport to regulate political, religious, or other activities.

*Association of Community Organizations for Reform Now,* slip op. at 8.

Plaintiffs challenged the facial validity of the ordinance, arguing that the language was unconstitutionally vague, particularly with respect to the scope of the ordinance's application. The district court noted that the ordinance did not define "charitable purposes." The court rejected the city's argument that the ordinance's requirement that an organization applying for a permit must be a "benevolent, philanthropic, patriotic, or eleemosynary organization" registered under the Charitable Solicitation Act (Ill. Rev. Stat. 1983, ch. 23, par. 5102), or be exempt from such registration, served to narrow the scope of the ordinance. The court noted that this requirement merely compelled organizations to be in compliance with state law. *Association of Community Organizations for Reform Now,* slip op. at 21-22. The court found that the term "charitable purposes" was unconstitutionally vague and required police to make decisions on the street as to whether a particular organization was soliciting for charitable purposes, as opposed to some other purpose. Thus, the ordinance vested unbridled discretion in the police to decide what organizations were violating the ordinance when they solicited without a permit. The court noted that the term "charitable purposes" is "generic, malleable, and difficult to apply." *Association of Community Organizations for Reform Now,* slip op. at 23.

The third federal decision relied on by the circuit court in this case is *Carolina Action v. Pickard,* 465 F. Supp. 576 (W.D.N.C. 1979). There, the district court struck down an ordinance that imposed a requirement that expenses of soliciting not exceed 25% of contributions and required a permit for organizations soliciting for "charitable, patriotic, educational or philanthropic purposes." These terms were not defined in the ordi-

nance. *Carolina Action*, 465 F. Supp at 577. Plaintiff was denied a permit on the ground that the cost of its fund-raising effort would exceed the 25% ceiling set forth in the ordinance. *Carolina Action*, 465 F. Supp. at 578. The district court held the ordinance unconstitutionally vague, noting the inconsistency with which defendants applied the permit and expense percentage requirements. Some organizations were allowed to solicit without any investigation into the accuracy of the statements on their permit applications. Other applications were approved despite incomplete information. At times, organizations whose reported costs exceeded the 25% limitation were issued permits. *Carolina Action*, 465 F. Supp. at 579-80. The court also noted that while defendants had construed the term "charitable" to exclude political organizations, it had included as charitable some organizations that were in fact political. *Carolina Action*, 465 F. Supp. at 581-82.

We note that lower federal court decisions are not binding on Illinois courts, but may be considered persuasive authority. *People v. Stansberry*, 47 Ill. 2d 541, 545 (1971). However, this court has the final word on interpretation of Illinois statutes.

We find that the cited cases are distinguishable from the case before us. In *Golden*, the phrase "charitable, religious, patriotic or philanthropic purpose or otherwise provides a service or product so necessary for the general welfare of the residents of the city that such activity does not constitute a nuisance" was not defined in the ordinance, nor were there any regulations or directions to guide the city council's discretion. The record indicated that the council had applied the ordinance inconsistently. We disagree with the district court's conclusion in *Association of Community Organizations for Reform Now* that reference in the ordinance to the Solicitation Act did not provide a definition of the term "charitable pur-

poses." In *Carolina Action*, the terms "charitable," "patriotic," "educational," and "philanthropic" were not defined in the ordinance. Although defendants had interpreted those terms so as not to include political organizations, the ordinance had been applied inconsistently.

In all three cases, the regulatory schemes required either a permit to solicit or the obtaining of an exemption to a general prohibition on solicitation. In the instant case, the Solicitation Act merely requires that entities subject to its provisions register and report certain specified information. In addition, the Solicitation Act contains definitions of the terms "[c]haritable organization" and "charitable purpose." 225 ILCS 460/1(a), (f) (West 1998).

In fact, the terms "charity" and "charitable" have a settled meaning in Illinois case law. For example, in *Congregational Sunday School & Publishing Society v. Board of Review*, 290 Ill. 108 (1919), the appellant's claimed exemption from personal property taxation for religious books and Sunday school supplies was denied. See *Congregational Sunday School*, 290 Ill. at 109, 113. This court, in construing the statutory term "beneficent and charitable organizations," noted that charity is a gift to be applied for the benefit of an indefinite number of persons, by bringing their " 'minds and hearts under the influence of education or religion, *** by assisting them to establish themselves in life *** or by otherwise lessening the burdens of government.' " *Congregational Sunday School*, 290 Ill. at 112-13, quoting *Crerar v. Williams*, 145 Ill. 625, 643 (1893).

The Solicitation Act was construed in *People ex rel. Hartigan v. National Anti-Drug Coalition*, 124 Ill. App. 3d 269 (1984). There, the State sought injunctive relief against defendant and an accounting of donations solicited by it without first registering under the Solicitation

Act as a charitable organization. The circuit court granted the State's motion to strike defendant's affirmative defenses that the Solicitation Act was unconstitutionally overbroad and vague and that it violated the first amendment to the United States Constitution. *Hartigan*, 124 Ill. App. 3d at 270. The circuit court granted the relief requested on the ground that defendant was a charitable organization and required to register. *Hartigan*, 124 Ill. App. 3d at 271.

On appeal, the appellate court found defendant's constitutional claims waived. *Hartigan*, 124 Ill. App. 3d at 272. In addressing the question of whether defendant was in fact a charitable organization, the appellate court noted that:

> "The courts in this State are in accord in applying a broad legal definition of 'charity' to include almost anything that tends to promote the improvement, well[-]doing and well[-]being of social man. [Citation.] Moreover, charitable organizations may include organizations whose primary purpose is *not* to provide money or services for the poor, the needy or other worthy objects of charity, but *to gather and disseminate information about and to advocate positions on matters of public concern.*" (Emphases in original.) *Hartigan*, 124 Ill. App. 3d at 274.

The court held that, based upon the evidence before the circuit court, defendant had a charitable purpose. *Hartigan*, 124 Ill. App. 3d at 274-75.

Thus, the term "charity" has a broad legal meaning. This court has stated:

> " 'A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens of government.' " *Crerar v. Williams*, 145 Ill. 625, 643 (1893), quoting *Jackson v. Phillips*, 14 Allen 556.

The Solicitation Act's definition of "charitable organization" is so well understood that it has been incorporated into other Illinois statutes. For example, the statute defining the offense of international terrorism provides that the terms "[c]haritable organization," "professional fund raiser," and "professional solicitor" have the meanings ascribed to them by the Solicitation Act. 720 ILCS 5/29C—5 (West 1998). Likewise, the Good Samaritan Food Donor Act (745 ILCS 50/1 *et seq.* (West 1998)) provides that the term "[c]haritable organization" is to be defined as set forth in the Solicitation Act. 745 ILCS 50/2.02 (West 1998). Some Illinois statutes provide even broader definitions of "charitable organization" than does the Solicitation Act. The Illinois Pull Tabs and Jar Games Act (230 ILCS 20/1 *et seq.* (West 1998)) defines "[c]haritable organization" as "an organization or institution organized and operated to benefit an indefinite number of the public." 230 ILCS 20/1.1 (West 1998). The same definition applies to the Bingo License and Tax Act (230 ILCS 25/1 (West 1998)).

Other states have rejected vagueness challenges to broad definitions of "charitable" or similar terms. In *State v. Watson*, 433 N.W.2d 110 (Minn. App. 1988), defendant was convicted of, *inter alia*, diversion of charitable gambling funds. He challenged Minnesota's charitable gambling statute, arguing that it was unconstitutionally vague. *Watson*, 433 N.W.2d at .111. He claimed that use of the term "lawful purposes" as defined in the statute did not give a person of ordinary intelligence fair notice of what conduct was proscribed. *Watson*, 433 N.W.2d at 112. The statute provided that profits from lawful gambling could be used only for lawful purposes or expenses related to the gambling operation. In upholding the statute's constitutionality, the court of appeals noted that

"Statutes regulating charities must be inclusive so as to cover many varied organizations. The fact that a statute is

inclusive does not make it vague. Definitions of charitable or lawful purposes, therefore, are by nature general and more inclusive." *Watson*, 433 N.W.2d at 113.

The court found the definition of "lawful purposes" to be similar to the generally accepted legal definition of "charitable." *Watson*, 433 N.W.2d at 113-14.

In *Holloway v. Brown*, 62 Ohio St. 2d 65, 403 N.E.2d 191 (1980), an ordinance prohibited a person from soliciting for a charitable organization unless the organization registered with a commission. Professional promoters and solicitors were required to obtain a license. "Professional promoter" was defined in the ordinance as a person who for compensation plans, promotes, or carries on any drive or campaign for the purpose of soliciting contributions on behalf of any charitable person or engages in the business of soliciting contributions for charitable purposes. *Holloway*, 62 Ohio St. 2d at 67-68, 403 N.E.2d at 193. The term "charitable" was defined as "meaning and including 'the words patriotic, philanthropic, religious, social service, welfare, benevolent, educational, civic or fraternal, either actual or purported.' " *Holloway*, 62 Ohio St. 2d at 70, 403 N.E.2d at 195. One of plaintiffs' arguments was that the definition of "charitable" was unconstitutionally vague. *Holloway*, 62 Ohio St. 2d at 70, 403 N.E.2d at 195. The Ohio Supreme Court rejected this argument, finding that the term "charitable" has a meaning that persons of ordinary intelligence can discern, and that this is especially true when the ordinance itself defines the term more specifically. *Holloway*, 62 Ohio St. 2d at 75, 403 N.E.2d at 198.

Although the terms at issue in this case are broad in scope, we fail to see how they could be more precisely defined. Given the wide variety of organizations subject to the Solicitation Act, an all-inclusive definition must be used. The terms defendants challenge have well-settled definitions in Illinois jurisprudence. Judicial interpreta-

tions of the same or similar terms in other states also support our conclusion that the terms "charitable organization" and "charitable purpose" are not unconstitutionally vague.

We conclude that the Solicitation Act's registration and reporting requirements are narrowly tailored to serve the state's substantial governmental interest in protecting its citizens from fraud and do not unnecessarily burden first amendment speech. Therefore, the terms "charitable organization" and "charitable purpose" are not unconstitutionally vague.

## CONCLUSION

For the reasons stated, we reverse the circuit court's judgment and remand to that court for further proceedings.

*Reversed and remanded.*