In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1381

TE-TA-MA TRUTH FOUNDATION—FAMILY OF URI, INC.,

*Plaintiff-Appellant*,

*v.*

WORLD CHURCH OF THE CREATOR,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 2638—**Joan Humphrey Lefkow**, *Judge.*

ARGUED JUNE 4, 2002—DECIDED JULY 25, 2002

Before COFFEY, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* The "Church of the Creator" and the "World Church of the Creator" have irreconcilable creeds. The Church of the Creator (the operating name of TE-TA-MA Truth Foundation—Family of URI, Inc.) believes in universal love and respect. Its Sacred Mandate reads:

### CHURCH OF THE CREATOR®

Supports the Family Unification of Mankind
In All Aspects Of The Whole.
We of Like Mind Join Harmoniously In
Oneness, Knowing That There Is Only
One Creator-Source.
The Many In One Dedicate Our Physical
Embodiments To The God Expression
In Form, Bringing Forth By Example
To This Planet Earth
Love, Light and Peace.
Therefore, Once Decreeing
DIVINE RIGHT ORDER®
In All Thoughts – All Things, Our
Universe Automatically Aligns Into
Manifestation of Heaven On Earth.
Through The Priesthood of Melchizedek
We Are One In The Body Of Jesus Christ.
As Above So Below.

The Church's web site <http://www.churchofthecreator.org>
provides additional details, including the text of the Divine
Right Order. World Church of the Creator, by contrast, does
not worship God but instead depicts the "white race" as the
"Creator" and calls for the elimination of Jews, blacks, and
what it labels "mud races." Its slogan is: "Dedicated to the
Survival, Expansion, and Advancement of the White Race".
The World Church of the Creator's beliefs are explicated
more fully in *Nature's Eternal Religion*, a book by its
founder, Ben Klassen, and on its web site <http://www.
wcotc.com>. The Church of the Creator is a recognized
religious charity. The World Church of the Creator, as a
racist group, is not entitled to that benefit, see *Bob Jones
University v. United States*, 461 U.S. 574 (1983), and has
had its charitable status revoked by both state and federal
governments. See *Church of the Creator, Inc. v. CIR*, 707
F.2d 491 (11th Cir. 1983); *People ex rel. Ryan v. World*

*Church of the Creator*, 198 Ill. 2d 115, 760 N.E.2d 953 (2001) (discussing related issues following the loss of state tax-exempt status in 1995). (Note the change from "Church of the Creator, Inc." to "World Church of the Creator," an unincorporated association. This is apparently part of a judgment-proofing strategy after a court held in 1994 that Klassen's organization must pay damages for orchestrating a murder. *Mansfield v. Pierce*, 1998 U.S. App. LEXIS 17086 (4th Cir. July 27, 1998), supplies details. Klassen committed suicide in 1993, and Matt Hale became "Pontifex Maximus" of the reconstituted organization in 1996.)

What has led to this litigation between the two organizations is the little ® symbol attached to Church of the Creator. (To promote clarity, from now on we refer to the Church of the Creator as "the Foundation" and the World Church of the Creator as "the World Church.") Klassen founded and named his group in 1973, while the Foundation did not begin using "Church of the Creator" until 1982. But the Foundation was first to take advantage of the federal trademark-registration system, seeking protection in 1987 for its name and symbol (a radiant dove centered on a six-pointed star with a multi-colored background):

The Patent and Trademark Office (PTO) granted the Foundation's application in 1988, though it required the Foundation to disclaim any right to the word "church." See Trademark Registration No. 1,496,724. Five years passed, during which Klassen's group did not protest this registration. The PTO then accepted and filed a declaration that the mark had become incontestable under 15 U.S.C. §1065—which means that it may be enforced, without proof of secondary meaning, even if it is a descriptive name for the qualities or characteristics of a good or service. See *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985). When the Foundation began to receive protests about its supposedly racist creed—complaints demonstrating confusion between the two groups—it set out to enforce its incontestable mark by seeking an injunction against the World Church's use of what is obviously a confusingly similar name. The groups' symbology differs, as the World Church's banner shows:

But the Foundation's mark includes the name as well as the graphic presentation.

Although an incontestable mark may be enforced even if it is descriptive, it is subject to cancellation if it is or becomes generic. Section 1065, which sets out the rules for incontestable marks, begins: "Except on a ground for which application to cancel may be filed at any time under paragraphs (3) and (5) of section 1064 of this title", and §1064(3) permits cancellation "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered". Thus as the Court recognized in *Park 'N Fly* an incontestable mark does not confer any rights to a phrase that was generic at the outset or has become so through use. "A generic term is one

that refers to the genus of which the particular product is a species." 469 U.S. at 194. The World Church's defense in this suit is that "Church of the Creator" is generic: that it names the genus of all monotheistic religions, of which particular creeds such as Judaism, Christianity, and Islam (and all their many subdivisions) are the species. The Foundation replied with two procedural points: first, that although generic status allows *cancellation* of a mark by the PTO under §1064, it does not afford a defense while the mark remains uncancelled; second, that incontestable status provides at least a powerful presumption that the mark is non-generic, a presumption that can be overcome only by strong evidence of actual usage. The district judge brushed aside both of these arguments and, relying exclusively on dictionary definitions of the word "creator," entered summary judgment for the World Church. *TE-TA-MA Truth Foundation—Family of URI, Inc. v. World Church of the Creator*, 2002 U.S. Dist. LEXIS 1478 (N.D. Ill. Jan. 31, 2002).

On appeal the Foundation repeats its contention that the PTO, rather than a court, is the proper forum for any contention that an incontestable mark is generic. This contention, which relies principally on 15 U.S.C. §1115(b) ("To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark"), finds some support in the language of *Sovereign Order of St. John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1240 (6th Cir. 1997), but not in the holding of that or any other circuit—and it is untenable. Even if a mark must be canceled before enforcement may be denied, trademark law does not reserve the cancellation power to the PTO. A court may cancel a mark itself or order the agency to do so. 15 U.S.C. §1119. So even if the sequence must be generic status to cancellation to nonenforcement, a court can handle all of the stages. This means that the

generic nature of a mark may be a defense in litigation. And if a court may order a mark canceled, an incontestable registration is more like a bursting-bubble presumption of non-generic-ness than like the sort of indomitable presumption that the Foundation seeks. Like the district court, then, we proceed to ask whether "Church of the Creator" is generic.

Unlike the district court, we conclude that this phrase is descriptive rather than generic. Appellate review of a summary-judgment decision is plenary. Both sides moved for summary judgment, so each was required to introduce evidence to show that a material issue of disputed fact remained for decision. Confronted with the Foundation's motion, the World Church produced—nothing but a dictionary. It did not offer any evidence about how religious adherents use or understand the phrase as a unit. It offered only lexicographers' definitions of the individual words. That won't cut the mustard, because dictionaries reveal a range of historical meanings rather than how people use a particular phrase in contemporary culture. (Similarly, looking up the words "cut" and "mustard" would not reveal the meaning of the phrase we just used.)

Contemporary usage does not treat "Church of the Creator" as the name for monotheistic religion—or any other genus of religion. If it were, then the World Church itself would be misusing the phrase, for it is not theistic in any traditional sense and has nothing in common with Judaism, Christianity, or Islam. The World Church's web site, and much of its literature, feature one international negation symbol (a circle with a diagonal bar) superimposed over a Star of David and another superimposed over a cross. It condemns the Bible as a hoax.

A mark is "generic" when it has become the name of a product (e.g., "sandwich" for meat between slices of bread) or class of products (thus "church" is generic). But "Church

of the Creator" is descriptive, like "lite beer." It does not name the class of monotheistic religions. In the contemporary United States, variations on "Church of [Deity]" are used to differentiate individual denominations, not to denote the class of all religions. The list is considerable: Church of God; Church of God (Anderson, Indiana); First Church of God; Worldwide Church of God (see *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000)); Church of God in Christ; Assembly of God; Korean Assembly of God; Church of the Nazarene; Church of Christ; United Church of Christ; Disciples of Christ; Church of Christ, Scientist; Church of Jesus Christ of Latter Day Saints. There is room for extension with Church of Our Savior, Church of the Holy Spirit, Church of the Holy Trinity, Church of Jehovah, and so on. Yet all of these are recognizable as denominational names, not as the designation of the religion to which the denominations belong. No Jewish, Islamic, Baha'i, or Unitarian group would say that it belongs to a "Church of the Creator"; and a Christian congregation would classify itself first into its denomination (e.g., Baptist, Lutheran, Russian Orthodox, Society of Friends), then into one of the major groupings (Roman Catholic, Orthodox, and Protestant), and finally into Christianity, but never into a "Church of the Creator." No one called or emailed a *Baptist* church to complain about its complicity in the hate-mongering of the World Church of the Creator; people recognized the name as denominational, and that's why protests ended up in the Church of the Creator's in box.

What is more, as these lists show, using "Church of the Creator" as a denominational name leaves ample options for other sects to distinguish themselves and achieve separate identities. It is not remotely like one firm appropriating the word "sandwich" and thus disabling its rivals from explaining to consumers what's to eat. When the line between generic and descriptive terms is indistinct—as it is,

for example, with a phrase such as "liquid controls," see *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934 (7th Cir. 1986)—it is helpful to ask whether one firm's exclusive use of the phrase will prevent a rival from naming itself and describing its product. (As far as the Lanham Act is concerned, a denomination is a producer and religious services and publications are products. Neither side has questioned the application of trademark laws to religion.) Because there are so many ways to describe religious denominations, there is no risk that exclusive use of "Church of the Creator" will appropriate a theology or exclude essential means of differentiating one set of beliefs from another.

The World Church has a fallback argument: that recognizing a trademark in "Church of the Creator" violates the first amendment. Yet as *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522 (1987), observed when rejecting a similar contention, the Constitution itself authorizes Congress to create rights of this kind. Cf. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985). Trademark rights promote the aims of the first amendment by enabling producers of the spoken and written word to differentiate themselves. If multiple businesses use the same (or confusingly similar) names, the result is cacophony rather than discussion or debate. If every candidate on the ballot ran under the same name, this would do more to befuddle the voters than to promote the candidates' freedom of expression. Cf. *Grimes v. Smith*, 585 F. Supp. 1084 (N.D. Ind. 1984), affirmed, 776 F.2d 1359 (7th Cir. 1985). It is questionable whether the World Church is a religion (not all philosophical beliefs are religious), but, if it is, still Congress need not exempt religions from generally applicable laws. See *Employment Division v. Smith*, 494 U.S. 872 (1990). The World Church has every right to a distinctive name; it does not have

a constitutional right to use some other denomination's incontestable trademark.

By this time, a reader familiar with the Lanham Act may have grown frustrated by our inattention to what must seem the most obvious argument on behalf of the World Church: prior use. Ben Klassen published *Nature's Eternal Religion*, and adopted the name "Church of the Creator," in 1973, nine years before the Foundation began using that phrase. Section 1065 provides that even incontestable marks must yield to "a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark". Yet the World Church has not urged prior use as a defense, presumably because of the reorganization designed to avoid paying the judgment mentioned in this opinion's opening paragraph. The corporation that adopted the name "Church of the Creator" in 1973 no longer exists; the organization "World Church of the Creator" formed in 1996 is junior to the Foundation. It turns out that tactics adopted to avoid paying for one's wrongs have collateral costs.

The judgment of the district court is reversed, and the case is remanded with instructions to enter an appropriate judgment in favor of the Foundation.

A true Copy:

　　　　Teste:


　　　　　　　　　　　_____
　　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　　*Appeals for the Seventh Circuit*